IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**RODNEY MICHAEL REYNOLDS**                                                    **PLAINTIFF**

**v.**                                    **4:18-CV-00842-BRW**

**LITTLE ROCK SCHOOL DISTRICT,** *et al.*                              **DEFENDANTS**

**ORDER**

Pending is Defendants' Motion to Dismiss (Doc. No. 55). Plaintiff has responded.[1] For the reasons below, the motion is GRANTED.

**I. BACKGROUND**

Plaintiff was a teacher in the Little Rock School District, and questioned how Defendants were treating the special education programs and facilities where Plaintiffs worked. He alleges Defendant retaliated against him for raising these issues, in violation of the Rehabilitation Act.

Plaintiff's original complaint, filed on August 16, 2018, alleged that he was subjected to retaliation in the "Spring of 2015."[2] After Defendants' filed the Motion to Dismiss based on the statute of limitations, Plaintiff filed a 190-page Amended Complaint reciting grievances from 2008 through 2015.[3] In the Amended Complaint, Plaintiff alleged that he was "constructively discharged . . . over the course of 2015."[4] In a January 2, 2020 Order, I noted:

> In the Amended Complaint Rodney Michael Reynolds alleges that he was on medical leave at the beginning of the 2015-2016 school year and that on December 11, 2015, "Eason told Reynolds that he could retire or be terminated, and that he needed to decide immediately." Although it is not clear how Eason's actions are

---

[1]Doc. No. 67.

[2]Doc. No. 2.

[3]Doc. No. 41-1.

[4]*Id.*

1

related to Plaintiffs' claims of First Amendment and Rehabilitation Act retaliation, dismissal is not appropriate based on the record before me.[5]

Ultimately, I directed Plaintiff to file a second amended complaint including only the alleged Rehabilitation Act retaliation claims that occurred within the limitations period.[6]

Plaintiff filed the Second Amended Complaint on January 16, 2020, and Defendants have again filed a Motion to Dismiss based on the statute of limitations.[7]

## II. DISCUSSION

Plaintiff does not dispute that the statute of limitations for his claims is three years. As noted previously, I disagree with Plaintiff's argument that the statute of limitations runs from the date of separation. Again, the statute of limitations commenced when Defendants allegedly violated Plaintiff's rights, not when the employment contract concluded.[8]

Plaintiff filed his original complaint on August 16, 2018. So, Plaintiff must allege that some Rehabilitation Act retaliation occurred after August 16, 2015. In the Second Amended Complaint, Plaintiff asserts that "[a]t the beginning of the 2015-2016 school year, Rodney Michael Reynolds reported to work . . . but was assigned to his brother's former position as a resource teacher."[9] Although Plaintiff does not provide a specific date regarding the "beginning

---

[5]Doc. No. 43.

[6]*Id.*

[7]Doc. Nos. 44, 55.

[8]*Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) ("[T]he only alleged discrimination occurred–and the filing limitations periods therefore commenced–at the time the tenure decision was made and communicated to Ricks. That is so even though one of the effects of the denial of tenure–the eventual loss of a teaching position–did not occur until later.").

[9]Doc. No. 44 at ¶ 23.

of the 2015-2016 school year," it is clearly before August 10, 2015, since that's when he obtained a note from his doctor indicating that he was unable to work.[10]

Plaintiff asserts that he "experienced retaliatory adverse employment actions in November and December 2015."[11] The following are allegations from the Second Amended Complaint during the relevant time period:

- On August 12, 2015, Plaintiff requested short-term disability leave through November 17, 2015.[12]

- Plaintiff's EEOC form claims that the last date of discrimination was on August 18, 2015, but he does not contain anything specific regarding what happened on that day.[13] It appears to be unrelated to the Rehabilitation Act issues.

- On November 5, 2015, he went to Defendants' central office but "felt that office staff was extremely tense and afraid to talk normally to him."[14]

- On November 5, 2015, Plaintiff went to a school to pick up some personal items "but was stopped by security and inexplicably treated as though he represented a threat, and aggressively turned away."[15]

---

[10] *Id.* at ¶ 29.

[11] Doc. No. 67.

[12] Doc. Nos. 44 and 45-8 at p. 31 of 37.

[13] Doc. No. 45-8 at p. 32 of 37.

[14] Doc. No. 44.

[15] *Id.*

- On November 6, 2015, Plaintiff emailed his supervisor advising that he was not allowed in the building because he was on medical leave. The supervisor said they would be happy to get the personal items for Plaintiff.[16]

- On November 7, 2015, Plaintiff replied to the supervisor with details of his personal issues and complained about how he thought things were being handled incorrectly at the school. The supervisor did not respond to the email.

- On December 11, 2015, Defendants' employee, Ms. Jordan Eason, called Plaintiff regarding whether he intended to return to work. When he said that he could not return at that time, he was told that he could retire or be terminated.

- On December 17, 2015, Plaintiff submitted his retirement notice to Defendants.[17]

In his response to the motion to dismiss, Plaintiff again asserts that he "has pled with detailed specificity that he engaged in Rehabilitation Act protected speech on November 5 and 7, 2015, and experienced retaliation on November 5, 7, and December 11, 2015."[18] None of these allegations, taken separately or together, support Plaintiff's assertion that he was retaliated against for reporting violations of the Rehabilitation Act. Office staff being "extremely tense and afraid to talk," the lack of response to an email, and Defendants' inquiry about whether Plaintiff was returning to work following the expiration of his medical leave are not adverse employment actions. Even if they were, Plaintiff's Second Amended Complaint established no

---

[16]Doc. No. 45-8, p. 33 of 37.

[17]Doc. No. 45-8, p. 34 or 37.

[18]Doc. No. 68.

4

causal connection between the Defendants' actions and his reports of perceived violations of the Rehabilitation Act.[19]

Plaintiff alleges that the statute of limitations for the constructive discharge claim commenced on December 17, 2015 – the day he notified Defendant that he was retiring.[20] It appears to me that Plaintiff is attempting to use the constructive discharge claim to revive his time-barred claims. Nevertheless, this claim fails for several reasons. "To constitute constructive discharge, a plaintiff must show more than just a [Rehabilitation Act] violation by her employer."[21] "Constructive discharge occurs 'when an employer deliberately renders the employee's working conditions intolerable and thus forces [him] to quit [his] job.' The employer's actions must have been intended to force the employee to quit, meaning the employee's resignation must be a reasonably foreseeable consequence of the employer's discriminatory actions."[22] None of Plaintiff's allegations support a finding that Defendant intended to force him to retire or that his retirement was reasonably foreseeable. The isolated incidents that occurred within the limitations period certainly do not support such a finding.

Additionally, by the time Plaintiff resigned, he has not been at work in over four months, so he was not being subjected to the alleged Rehabilitation Act violations or alleged harassment that he found intolerable. In fact, Plaintiff never worked during the 2015-2016 school year, so any complaints about the conditions are speculation. "[A]n employee has an obligation not to

---

[19]*Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013) ("To establish unlawful retaliation under the [Rehabilitation Act], a plaintiff must show that (1) she engaged in a statutorily protected activity, (2) the employer took an adverse action against her, and (3) there was a causal connection between the adverse action and the protected activity.").

[20]Doc. No. 67.

[21]*Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir. 1998).

[22]*Id*. (quoting *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir. 1981)).

5

assume the worst and not to jump to conclusions too quickly. An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged."[23]

Finally, "[a] plaintiff suing under the Rehabilitation Act must exhaust administrative remedies."[24] It does not appear that Plaintiff has done so in this case. The only EEOC claim in the record is involves Plaintiff taking medical leave based on his disability.[25] The EEOC complaint had no connection to the Rehabilitation Act issues, and makes no mention of the Rehabilitation Act, retaliation, harassment, or constructive discharge.

## CONCLUSION

For the reasons set out above, Defendants' Motions to Dismiss (Doc. Nos. 55) is GRANTED.

IT IS SO ORDERED this 3rd day of April, 2020.

Billy Roy Wilson  
UNITED STATES DISTRICT JUDGE

---

[23]*Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996).

[24]*Frye v. Aspin*, 997 F.2d 426, 428 (8th Cir. 1993).

[25]Doc. No. 45-8 at p. 32 of 37.